The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMBER KRABACH,

         Plaintiff,

v.

KING COUNTY et al.,

         Defendant.

Civil Action No. 2:22-cv-1252-BJR

**ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## I.     INTRODUCTION

Plaintiff Amber Krabach ("Plaintiff") seeks declaratory and injunctive relief against Defendants King County, Julie Wise in her individual capacity and in her capacity as the Director of King County Elections ("the County Defendants"), Steve Hobbs in his official capacity as Secretary of State of Washington, and Jay Inslee in his official capacity as Governor of the State of Washington ("the State Defendants"). Dkt. No. 70. Currently before the Court is the State Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 76. The County Defendants join the motion.[1]

---

[1] Although the County Defendants purport to join the motion to dismiss, they filed an answer to the second amended complaint on April 11, 2023, before they filed the notice of joinder. Dkt. No. 74. Federal Rule 12(b) states that a motion to dismiss brought pursuant to Rule 12(b)(6) "must be made before" the filing of an answer. *See Elvig v. Clavin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) ("A Rule 12(b)(6) motion must be made *before* the responsive pleading.")

Dkt. No. 77. Having reviewed the motion, the opposition and reply thereto, the record of the case, and the relevant legal authorities, the Court will grant the motion.

## II.      BACKGROUND

### A.      Procedural History

Plaintiff filed this lawsuit in September 2022 alleging that the State and County Defendants violated her state and federal constitutional rights by removing signs she caused to be placed near ballot collection boxes in King County during the August 2022 Washington State primary election. She further asserted that she wanted to repost the signs during the upcoming 2022 midterm election but feared criminal retribution by Defendants. Therefore, she filed a motion for a preliminary injunction seeking declaratory and injunctive relief prohibiting Defendants from removing the signs and/or otherwise discriminating against her First Amendment activities. Plaintiff alleged that the Defendants removed the signs pursuant to Washington electioneering laws and regulation RCW 29A.84.510(1)(a), RCW 29A.84.520, and/or W.A.C. 434-250-100(6). Defendants countered that the foregoing statutes and regulation are irrelevant to the parties' alleged actions; rather, the signs were removed because they are prohibited by federal law.

This Court denied Plaintiff's motion for a preliminary injunction, concluding that the complaint failed to raise a live case or controversy because the challenged electioneering laws are irrelevant to Plaintiff's alleged conduct and, therefore, awarding the relief she sought would not redress her purported injuries. Dkt. No. 36 at 6-7. In other words, even were the Court to find the Washington electioneering laws unconstitutional as Plaintiff claims, this would not stop

---

(emphasis in original). As stated above, the State Defendants move to dismiss pursuant to both Rule 12(b)(1) and 12(b)(6). Therefore, this Court interprets the County Defendants' joinder as a joinder of the 12(b)(1) portion of the motion but not the 12(b)(6) portion.

Defendants from removing the signs during an upcoming election because Defendants contend

that the signage is prohibited by federal law. Plaintiff filed an interlocutory appeal with the Ninth

Circuit, which the Appellate Court denied on August 14, 2023. Dkt. No. 103. Plaintiff's request

for an *en banc* review was denied on September 27, 2023. Dkt. No. 105.

In the meantime, proceedings in this case continued. Plaintiff requested, and received,

permission to file an amended complaint, which she filed on January 13, 2023. Dkt. No. 59. This

Court reviewed the amended complaint and determined that it did not address the pleading

deficiencies raised in the order denying Plaintiff's request for a preliminary injunction. Dkt. No.

69. The Court struck the amended complaint and instructed Plaintiff to refile an amended

complaint that adequately alleges claims for relief. She filed the second amended complaint on

March 28, 2023. Dkt. No. 70. It is this complaint that the State Defendants now move to dismiss.

Dkt. No. 76.

### B.    Factual Background

Plaintiff is a resident of King County who unsuccessfully ran for the Washington State

Legislature in the August 2022 Washington State primary election. Prior to the August 2022

election, Plaintiff printed and distributed signs containing the following message:

> This Ballot Dropbox is Under Surveillance – Accepting compensation for harvesting
> or depositing ballots may be a violation of federal law. 52 U.S. Code § 20511; 18
> U.S. Code § 594. Please report suspicious activity here [to a QR Code].[2]

Dkt. No. 70 at ¶ 24. She caused the signs to be placed near ballot drop boxes located in King

County starting on July 15, 2022. She alleges that she instructed the individuals who placed the

signs to put them "at least 50-100 feet away from the ballot drop boxes themselves, in public

rights of way and other areas where campaign signs by various candidates were permitted and

---

[2] The QR Code linked to a blank incident report on the King County GOP website.

1

2

appeared." *Id*. at ¶ 26. However, "[n]otwithstanding these instructions", she believes that "a number of the signs were ultimately found within 25 feet of ballot drop boxes." *Id*.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Plaintiff alleges that "[w]ithin days of the signs going up", she received a "cease-and-desist letter penned by Mathew Patrick Thomas, Chairman of the [King County] GOP, demanding that [she] '…immediately cease and desist in the publication, distribution and use of these signs and any reference to the KCGOP or the KCGOP EIC in any form.'" *Id*. at ¶ 30. She further alleges that the letter threatened legal action if the signs were not "immediately removed and destroyed" within (10) days from the date of the letter. *Id*. Plaintiff asserts that the foregoing letter was sent at the urging of Defendant Julie Wise, Director of King County Elections, who claimed that the signs constituted illegal voter intimidation in violation of federal law. Plaintiff further claims that the signs were removed by Defendants' agents and Defendants referred the matter to the King County Sheriff's Office for criminal investigation. In addition, Defendants issued several press releases condemning the placement of the signs as an attempt to intimidate voters. Plaintiff alleges that she wants to continue to place the signs near the ballot boxes but has refrained from doing so for fear of prosecution.

18

19

20

21

22

23

24

25

26

27

Plaintiff claims that the County and State Defendants acted pursuant to their interpretation of RCW 29A.84.510(1), RCW 29A.84.520, and WAC 434-250-100 (collectively "the Electioneering Laws") and RCW 29.A.84.620 and RCW 29.A.84.830 (collectively "the Voter Intimidation Laws") and that their actions unconstitutionally restricted her First Amendment right to free speech, as well as violated her Fourteenth Amendment substantive due process and equal protection rights. Plaintiff requests that this Court declare that the Electioneering Laws are overbroad, void-for-vagueness, and/or are unconstitutional on their face. She further requests that this Court declare that the Electioneering Laws and Voter Intimidation Laws are unconstitutional

1
2

as applied and further requests this Court to enjoin Defendants from enforcing them with respect

to Plaintiff's activities.

3

## III.    DISCUSSION

4
5

The State Defendants move to dismiss the second amended complaint pursuant to

6

Federal Rule of Civil Procedure 12(b)(1) and (6). They contend that dismissal pursuant to

7

Rule 12(b)(1) is necessary because Plaintiff lacks Article III standing to challenge the

8

Electioneering Laws and because this Court lacks jurisdiction over the claims against

9

Governor Inslee. Alternatively, they argue that dismissal pursuant to Rule 12(b)(6) is

10

required because the substantive claims fail as a matter of law. For the reasons stated

11

below, this Court concludes that Plaintiff cannot overcome the Rule 12(b)(1) jurisdictional

12

challenges and it does not reach the parties' Rule 12(b)(6) arguments.[3]

13
14

---

15
16

[3] There is a question as to whether the State Defendants' Eleventh Amendment challenge should be analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Compare Edelman v. Jordan*, 415 U.S. 651, 678 (1974) ("the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court"); *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997) ("The Eleventh Amendment creates an important limitation on federal court jurisdiction[.]"); *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte.") *with ITSI T.V. Prods., Inc. v. Agricultural Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993) ("we believe that Eleventh Amendment immunity, whatever its jurisdictional attributes, should be treated as an affirmative defense"); *Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) ("dismissal based on Eleventh Amendment immunity is not a dismissal for lack of subject matter jurisdiction, but instead rests on an affirmative defense."); *see also Sam v. Department of Public Safety*, 2021 WL 1032282, *2 (D. Hawai'i March 17, 2021) ("It is not entirely clear whether an Eleventh Amendment challenge should be analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) or Rule 12(c) for failure to state a claim upon which relief can be granted.") Here, whether this Court examines the question of Eleventh Amendment immunity under Rule 12(b)(1) for lack of jurisdiction or Rule 12(b)(6) for failure to state makes no difference as the standards and the result are the same for purposes of this motion. *See Sam*, 2021 WL 1032282, *2 (D. Hawai'i March 17, 2021).

17
18
19
20
21
22
23
24
25
26
27

A.      **Standard of Review**

Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed if its allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The plaintiff bears the burden to establish the court's jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleging such theory. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). While the Court accepts as true a complaint's well-pleaded facts, those facts must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court may consider documents attached to a complaint, documents incorporated by reference in a complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

B.      **Plaintiff Does Not Have Standing to Challenge the Electioneering Laws**

Plaintiff challenges the constitutionality of two Washington statutes: RCW 29A.84.510(1) and 29A.84.520, and one Washington regulation: 434-250-100. The parties refer to these collectively as "the Electioneering Laws". This Court previously denied Plaintiff's request for a preliminary injunction after determining that the Electioneering Laws were not the basis for Defendants' actions and, as such, a favorable decision by this Court (*i.e.*, that the Electioneering Laws are unconstitutional) would not redress Plaintiff's alleged injury. That being the case, Plaintiff lacked Article III standing to bring the lawsuit. Nevertheless, with the second amended complaint, Plaintiff continues to

challenge the constitutionality of the Electioneering Laws, and the State Defendants once again urge this Court to dismiss the claims for lack of standing.

"The doctrine of standing is rooted in the 'Cases or Controversies' clause of Article III of the Constitution." *M.S. v. Brown*, 902 F.3d 1076, 1082 (9th Cir. 2018). "To establish standing, a plaintiff must demonstrate a 'personal stake in the outcome of the controversy,' *id.* at 1083 (quoting *Gill v. Whitford*, 585 U.S. ——, 138 S.Ct. 1916, 1929, (2018), thus 'ensur[ing] that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society,'" *id.* (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Courts enforce this requirement by insisting that a plaintiff satisfy the familiar three-part test for Article III standing: that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 1540, 1547 (2026)).

### 1.    RCW 29A.84.510 and WAC 434-250-100

As stated above, the second amended complaint continues to allege that Defendants relied on the Electioneering Laws to remove her signs and requests that this Court declare the laws constitutionally infirm. The first Electioneering Law Plaintiff challenges is RCW 29A.84.510(1)(a) and its corresponding regulation WAC 434-250-100. RCW 29A.84.510(1)(a) prohibits certain electioneering activity within "25 feet measured radially from a ballot drop box" during the "eighteen days before" an election.[4] WAC 434-250-100 also prohibits the same

---

[4]Specifically, RCW 29A.84.510(1)(a) prohibits: (1) suggesting or attempting to persuade a voter to vote for or against a candidate or ballot measure; (2) circulating cards or handbills of any kind; (3) soliciting signatures for a petition; or (4) engaging in any practice that interferes with the freedom of voters to exercise their right to vote or disrupts the administration of the voting center.

activity within "twenty-five feet of a ballot deposit site". In rejecting Plaintiff's request for a

preliminary injunction prohibiting Defendants from enforcing these provisions, this Court

determined that the provisions are inapplicable to Plaintiff's actions for two independent reasons.

First, Plaintiff's original complaint specified that the signs were placed well-outside the 25-foot

limitation imposed by RCW 29A.84.510(1)(a) and WAC 434-250-100, thus rending the statute

and regulation inapplicable. *See* Dkt. No. 1 ¶ 25 ("Plaintiff instructed the individuals who

received signs to place them at least 50-100 feet away from the ballot boxes themselves…"). And

second, even if the signs had been placed within 25 feet of a ballot box, the record of the case

made clear that Defendants ordered the removal of Plaintiff's signs for violating voter

intimidation laws, not RCW 29A.84.510(1)(a) and WAC 434-250-100. *See e.g.* Dkt. No. 22 at 1

("[the electioneering] statutes and regulations are irrelevant" and "did not cause Director's Wise's

actions"). Thus, this Court concluded that Plaintiff did not have standing to bring the lawsuit

because her alleged injury would not be redressed by the relief she sought. *See Friends of the

Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181 (2000) (one

element of Article III's standing requirement is that "it is likely, as opposed to merely

speculative" that the injury will be redressed by a favorable decision). Stated differently, even if

this Court had determined that RCW 29A.84.510(1)(a) and WAC 434-250-100 are

constitutionally infirm as Plaintiff requested, such relief would not prohibit Defendants from

removing the signs during an upcoming election because they would be doing so pursuant to

entirely different laws.

      The second amended complaint tries to avoid this outcome by alleging that while

Defendants claim that they removed the signs for violating the voter intimidation laws as opposed

to the Electioneering Laws, Plaintiff "does not believe" that this is "the *bona fide* reason for the

County's removing the signs." *Id*. at ¶ 44. Rather, Plaintiff alleges, this is "a mere litigation position[] formulated by the King County Prosecuting Attorney's Office" after Plaintiff instituted this lawsuit. *Id*.

The second amended complaint fairs no better than the original complaint as it still has not sufficiently alleged that Defendants relied on RCW 29A.84.510(1)(a) and WAC 434-250-100 to remove the signs. Plaintiff's "belief" that Defendants removed the signs for reasons other than voter intimidation is insufficient to plausibly allege that Defendants acted pursuant to RCW 29A.84.510(1)(a) and WAC 434-250-100. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [.]"). This is particularly true when the Plaintiff's "belief" is construed in conjunction with the remaining allegations in the second amended complaint, which allege that Defendants acted pursuant to voter intimidation laws. *See*, *e.g.*, Dkt. No. 70 at ¶¶ 36-37 (alleging that Director Wise issued press releases in which she stated the signs were removed for "vote intimidation"); ¶ 40 (alleging that King County Executive characterized the signs as "intimidation"); and ¶ 41 (alleging that King County Prosecuting Attorney described the signs as "voter intimidation, period"); ¶ 43 (stating that County officials threatened Plaintiff with prosecution for "voter intimidation"). Indeed, the second amended complaint alleges that the signs were removed "without regard to their locations and whether they were within twenty-five (25) feet of any ballot drop boxes[.]" *Id*. at ¶ 34. Moreover, in answering the second amended complaint, Defendants once again assert that the Electioneering Laws played no role in their decision to remove the signs. *See* Dkt. No. 74 at ¶ 100 (stating that the Electioneering Laws are "inapposite" to the decision to remove the signs). Thus, the second amended complaint once again fails to sufficiently allege facts from which it can be plausibly inferred that RCW 29A.84.510(1)(a) and WAC 434-250-100 were the basis for

Defendants' actions; the amended complaint fails to satisfy the redressability requirement for Article III standing and Plaintiff's claims challenging RCW 29A.84.510(1)(a) and WAC 434-250-100 must be dismissed as a matter of law. *See Los Angeles County Bar Assn v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976) ("Article III mandates that the injury alleged, in addition to being actual and personal, be caused by the challenged action and be 'likely to be redressed by a favorable decision.'"); *Brown*, 902 F.3d at 1083 ("If [] a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability unless she adduces facts to show that the defendant or a third party are nonetheless likely to provide redress as a result of the decision.") (internal citations omitted).

### 2.    RCW 29A.84.520

The second amended complaint also challenges the constitutionality of the remaining Electioneering Law, RCW 29A.84.520. This statute prohibits electioneering activity at a voting center or ballot drop location by an "election officer". Plaintiff's argument assumes that she is an election officer and because the statute prohibits an election officer from preforming certain activities at a voting center or ballot box, it improperly encroaches on her First Amendment rights. Plaintiff's argument fails on her first assumption—she is not an "election officer" for purposes of RCW 29A.84.520. Washington law defines an "election officer" as "any officer who *has a duty to perform* relating to elections under the provisions of any statute, charter, or ordinance." RCW 29A.04.055 (emphasis added). Plaintiff alleges that she satisfies this criterion because "in the past she has performed duties under RCW 29A.84.510(5) and WAC 434-261-020, as an authorized observer for the [King County] GOP" and "she continues in a similar capacity for the Election Integrity Party". Dkt. No. 70 at 21 n. 7. Plaintiff is mistaken. RCW

29A.84.510(5) and WAC 434-261-020 do not impose *a duty* on election observers; they merely ensure that election observers are given access to voting centers and ballot boxes "for purpose of observing the election process." RCW 29A.84.510(5). Plaintiff also alleges that she qualifies as an "election officer" because she is a Precinct Committee Officer for the Seidel Creek precinct. *Id*. Precinct Committee Officers are internal officers of a political party, they are not representatives of the state. *See* WAC 434-230-100 ("The election of precinct committee officer is an intraparty election…."). Moreover, even if the second amended complaint plausibly alleged that Plaintiff is an "election officer" for purposes of RCW 29A.84.520, she does not allege that her actions were undertaken in that capacity. To the contrary, the second amended complaint unambiguously states that her actions were "undertaken in her individual capacity." *Id*. at ¶¶ 16 & 23. Simply put, RCW 29A.85.520 is not applicable to the allegations in this case; thus, a favorable decision for Plaintiff regarding this statute would not redress her alleged injury. Plaintiff's challenge to this statute also must be dismissed for lack of standing.

### C.   The Eleventh Amendment Bars Plaintiff's Claims against Governor Inslee and Secretary Hobbs

The Eleventh Amendment and the doctrine of sovereign immunity prohibit "federal courts from hearing suits against an unconsenting state." *Frandsen v. University of Alaska Fairbanks*, 539 F. Supp.3d 1012, 1018 (D. Alaska 2021) (quoting *Brooks v. Sulphur Springs Valley Elect. Co-op*, 951 F.2d 1050, 1053 (9th Cir. 1991)). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). The doctrine of sovereign immunity "extends also to [state] agencies and officers." *Sofamore Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997). State sovereign immunity, however, "is not limitless[.]" *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020). For instance, under *Ex parte Young*, 209 U.S. 123 (1908), "a litigant

may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Reeves*, 954 F.3d at 736. The Supreme Court has made clear that for the *Ex parte Young* exception to apply, the state official, by virtue of his office, must have "some connection with the enforcement" of the challenged law. *Young*, 209 U.S. at 157. The Ninth Circuit has clarified that "[t]his connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over persons responsible for enforcing the challenged provision will not subject an official to suit." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (quoting *Eu*, 979 F.2d at 704)).

Here, Plaintiff seeks declaratory and injunctive relief against Governor Inslee, requesting that this Court prohibit the Governor from "enforce[ing] [] the Electioneering Laws and the Intimidation Laws[] with respect to Plaintiff's First Amendment activities." Dkt. No. 70 at Relief Requested ¶ 9. The second amended complaint cites to the following as evidence of the Governor's direct connection with the enforcement of the Electioneering and Voter Intimidation Laws: (1) the Governor is "responsible for commanding the executive branch of Washington state government and for enforcing the laws generally, including, … [the Electioneering and Voter Intimidation Laws]" (*id.* at ¶ 8); (2) a July 20, 2022 King 5 news article in which the Governor called the signs "an outrage" and stated that his office "will follow the results of the [King County Sheriff's Office] investigation" and that "we will be taking whatever action is necessary to stop this behavior" (*id.*, citing Dkt. No. 1, Ex. 4); and (3) the Governor has not "disavowed any criminal prosecution of Plaintiff" (*id.* at ¶ 92).

The Court concludes that the foregoing allegations are insufficient to plausibly establish the Governor's connection with enforcement of the Engineering and Voter Intimidation Laws. As stated above, a "generalized duty" or "general supervisory power" will not subject an official to

suit. *Snoech v. Brussa,* 153 F.3d 984, 986 (9th Cir. 1998) (quoting *Eu*, 979 F.2d at 704); *see also*

*Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a

general duty to enforce state laws does not make him a proper defendant in every action attacking

the constitutionality of a state statute."). Plaintiff cites to RCW 43.10.090 to argue that the

Governor has more than a "generalized duty" to enforce the laws in Washington state. RCW

43.10.090 states that "[u]pon the written request of the governor, the attorney general shall

investigate violations of the criminal laws within this state." However, the statute unambiguously

leaves the decision whether to press criminal charges to the Attorney General. *Id*. (stating "*[i]f*,

after such investigation, *the attorney general believes* that the criminal laws are improperly

enforced in any county…the attorney general shall direct the prosecuting attorney to take such

action in connection with any prosecution as *the attorney general determines* to be necessary and

proper.") (emphasis added). Thus, while Governor Inslee may request that the Attorney General

investigate an individual's actions, he has no power to order that the individual be charged with a

crime. Such limited authority is insufficient "to establish "some connection with the enforcement"

of the challenged law. *Young*, 209 U.S. at 157; *see also S. Pac. Transp. Co. v. Brown*, 651 F.2d

613, 614 (9th Cir. 1980) (holding that the Oregon attorney general, who had the power to "consult

with, advise, and direct the district attorneys," had an insufficient connection to the challenged

statute, because his advice to prosecutors that the statute was unconstitutional could not bind them

and he could not bring a prosecution on his own).

     Nor does Governor Inslee's statement to the media that his office will take whatever

actions necessary to stop the signs from being placed near the ballot boxes nor his failure to

"disavow" criminal prosecution of Plaintiff establish the requisite connection to enforcement. The

Governor's statement to the press does not suggest that Plaintiff will be prosecuted; rather, read in

its entirety, the statement clearly states that the Governor contemplates the "need for 'additional legislation' in order to protect people's right to vote." Dkt. No. 1, Ex. 4. Endorsing and facilitating the passage of legislation falls squarely within the Governor's executive powers, prosecuting the law does not. Likewise, the Governor's failure to disavow the criminal prosecution of Plaintiff does not confer enforcement power on him. While the Governor's opinion regarding criminal charges may be "persuasive", it is in no way binding on the Attorney General. *See Brown*, 651 F.2d at 615 (noting that that state official's "advice that [a] statute was unconstitutional….might be persuasive" but the "district attorneys['] autonomy" meant it was not "binding" and, therefore, the attorney general lacked a "sufficient connection with enforcement to satisfy *Ex parte Young*"). Therefore, Plaintiff's claims against Governor Inslee are barred by the doctrine of sovereign immunity and must be dismissed as a matter of law.

The Court further concludes that Defendant Secretary of State Hobbs also must be dismissed from this case. The only allegation against Hobbs in the forty-page second amended complaint is as follows: "Steve Hobbs is the Secretary of State of Washington, and is sued only in his official capacity. The Secretary is an agency of Washington state government, responsible for overseeing and supervising elections and voting in the State of Washington, in accordance with applicable provisions of the RCW ch. 29A.84, *et seq.*, and regulations promulgated pursuant thereto." Dkt. No. 70 at ¶ 7. Plaintiff does not allege that Secretary Hobbs made any statements or took any action regarding her signs. Nor does she allege that he threatened or warned of an enforcement action. Rather, with the exception of Governor Inslee's July 20, 2022 statement to the media, the amended complaint attributes those actions entirely to the County Defendants. As previously stated, simply alleging that Secretary Hobbs has a supervisory duty to oversee the elections is insufficient to establish jurisdiction under *Ex parte Young*. *Wasden*, 376 F.3d at 919

(9th Cir. 2004) ("[A] generalized duty to enforce state law or general supervisory power over persons responsible for enforcing the challenge provision will not subject an official to suit.").

### IV.   CONCLUSION

For the foregoing reasons, the Court HEREBY RULES as follows:

(1) The Eleventh Amendment grants sovereign immunity to State Defendants Governor Inslee and Secretary Hobbs; therefore, they are DISMISSED from this case with prejudice, and

(2) Plaintiff does not have Article III standing to challenge the Electioneering Laws; as such, Plaintiff's claims based on RCW 29A.84.510(1), RCW 29A.84.520, and WAC 434-250-100, are DISMISSED as to all Defendants with prejudice.

Dated this 19th day of October 2023.

Barbara     Jacobs        Rothstein
U.S. District Court Judge