The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMBER KRABACH,<br><br>    Plaintiff,<br>    v.<br><br>KING COUNTY *et al.*,<br><br>    Defendants. | Civil Action No. 2:22-cv-1252-BJR<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS COUNTY DEFENDANTS' COUNTERCLAIMS** |

## I.       INTRODUCTION

Plaintiff Amber Krabach ("Plaintiff") seeks declaratory and injunctive relief against Defendants King County and Julie Wise in her individual capacity and in her capacity as the Director of King County Elections (collectively, "County Defendants") related to certain signs Plaintiff caused to be posted near King County ballot drop boxes during Washington State's 2022 primary election. Dkt. No. 70. Plaintiff also sought relief against Steve Hobbs in his official capacity as Secretary of State of Washington and Jay Inslee in his official capacity as Governor of the State of Washington (collectively, "State Defendants"); these defendants have been dismissed from the case. Dkt. No. 107. After extensive pleading practice, including several motions to dismiss as well as several amendments to the complaint, the County Defendants answered the operative complaint and filed counterclaims against Plaintiff. Currently before the Court is

Plaintiff's motion to dismiss the County Defendants' counterclaims. Dkt. No. 82. Having reviewed the motion, the opposition and reply thereto, the record of the case, and the relevant legal authorities, the Court will deny the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff filed this lawsuit in September 2022 alleging that State and County Defendants violated her state and federal constitutional rights by removing signs she caused to be placed near ballot drop boxes in King County during the August 2022 Washington State primary election. She further asserted that she wanted to repost the signs during the upcoming 2022 midterm election but feared criminal retribution by Defendants. Therefore, she filed a motion for a preliminary injunction seeking declaratory and injunctive relief prohibiting Defendants from removing the signs and/or otherwise discriminating against her First Amendment activities.

This Court denied Plaintiff's motion for a preliminary injunction, concluding that the complaint failed to raise a live case or controversy because the state laws that the complaint challenged are irrelevant to Plaintiff's alleged conduct and, therefore, awarding the relief she sought would not redress her purported injuries. Dkt. No. 36 at 6-7. Plaintiff filed an interlocutory appeal with the Ninth Circuit, which the Appellate Court denied on August 14, 2023. Dkt. No. 103. Plaintiff's request for an *en banc* review was denied on September 27, 2023. Dkt. No. 105.

In the meantime, proceedings in this case continued. Plaintiff requested, and received, permission to file an amended complaint, which she filed on January 13, 2023. Dkt. No. 59. This Court reviewed the amended complaint and determined it did not address the pleading deficiencies raised in the order denying Plaintiff's request for a preliminary injunction. Dkt. No. 69. The Court struck the amended complaint and instructed Plaintiff to refile an amended

complaint that adequately alleges claims for relief. She filed the second amended complaint on March 28, 2023. Dkt. No. 70. The County Defendants answered the second amended complaint and filed counterclaims. The State Defendants moved to dismiss the allegations against them, which this Court granted on October 19, 2023. Dkt. No. 107. With the instant motion, Plaintiff now seeks to dismiss the County Defendants' counterclaims.

B.     **Factual Background**

Plaintiff is a resident of King County who unsuccessfully ran for the Washington State Legislature in the August 2022 Washington State primary election. Prior to the August 2022 election, Plaintiff printed and distributed signs containing the following message:

This Ballot Dropbox Is
Under Surveillance

Accepting compensation for harvesting or
depositing ballots may be a violation of Federal Law
*(52 U.S. Code § 20511; 18 U.S. Code § 594)*

Please report suspicious activity here:

[QR Code].[1]

Dkt. No. 70 at ¶ 24. She caused the signs to be placed near ballot drop boxes located in King County starting on July 15, 2022. The County Defendants removed the signs and referred the matter to the King County Sheriff's Office for criminal investigation of possible voter intimidation. Plaintiff alleges that she wants to continue to place the signs near the ballot boxes but has refrained from doing so for fear of prosecution. Plaintiff claims that the County Defendants' actions unconstitutionally restricted her First Amendment right to free speech, as well as violated her Fourteenth Amendment substantive due process and equal protection rights.

---

[1] The QR Code linked to a blank incident report on the King County GOP website.

Plaintiff requests that this Court enjoin the County Defendants from removing Plaintiff's signs during future elections.

The County Defendants filed counterclaims alleging that Plaintiff's act of causing her signs to be posted near King County ballot drop boxes constituted unlawful voter intimidation in violation of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b) (the "Voting Rights Act") and Section 3 of the Civil Rights Act of 1871, 42 U.S.C. §1985(3) (the "Civil Rights Act") (also known as the Ku Klux Klan Act of 1871). The County Defendants seek a declaration that her action violates the foregoing Acts and a permanent injunction enjoining her from posting the signs.

### III. DISCUSSION

As stated above, the County Defendants assert that Plaintiff's actions violate the Voting Rights Act and the Civil Rights Act. Plaintiff moves to dismiss the counterclaims on the following grounds: (1) the County Defendants do not have standing to bring a claim pursuant to the Voting Rights Act, (2) Director Wise does not have standing to bring a claim under the Civil Rights Act, and (3) the County Defendants fail to state a claim on which relief can be granted.

#### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed if its allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The plaintiff bears the burden to establish the court's jurisdiction.[2] *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122

---

[2] It is important to note that the instant motion moves to dismiss counterclaims; therefore, the County Defendants take on the traditional role of a plaintiff.

(9th Cir. 2010). Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleging such theory. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). While the Court accepts as true a complaint's well-pleaded facts, those facts must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court may consider documents attached to a complaint, documents incorporated by reference in a complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B.     County Defendants Have Standing to Bring a Claim under the Voting Rights Act**

Plaintiff alleges that the County Defendants do not have standing to bring a claim under Section 11(b) of the Voting Rights Act. "The doctrine of standing is rooted in the 'Cases or Controversies' clause of Article III of the Constitution." *M.S. v. Brown*, 902 F.3d 1076, 1082 (9th Cir. 2018). "To establish standing, a plaintiff must demonstrate a 'personal stake in the outcome of the controversy,' *id.* at 1083 (quoting *Gill v. Whitford*, 585 U.S. ——, 138 S.Ct. 1916, 1929, (2018), thus 'ensur[ing] that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society,'" *id*. (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Courts enforce this requirement by insisting that a plaintiff satisfy the familiar three-part test for Article III standing: that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 1540, 1547 (2026)).

Plaintiff's argument on this point is difficult to decipher because she does not address the foregoing requirements, but instead argues that neither King County nor Director Wise has standing to bring a claim under the Voting Rights Act because Congress intended to "vest enforcement power [under the Voting Rights Act] solely in *federal* authorities…[.]" Dkt. No. 82 at 2-3 (emphasis in original). While Plaintiff is correct that Section 11(b) of the Voting Right Act does not contain an express private right of action, "persuasive authority across multiple districts has found congressional intent to create an implied right of action for § 11(b) specifically within the statutory text, meeting the 'high bar' for implied causes of action." *Michigan Welfare Rights Organization v. Trump*, 600 F. Supp. 3d 85, 105-106 (D.D.C. 2022); *see also Nat'l Coal. on Black Civic Participation v. Wohl ("Wohl I")*, 498 F. Supp. 3d 457, 476 (S.D.N.Y. 2020), *reconsideration denied*, 2020 WL 6365336 (S.D.N.Y. Oct. 29, 2020) ("Defendants contend that Section 11(b) affords no private right of action. That is incorrect. Consistent with 11(b)'s broad reach, both the government and private parties may sue to enforce Section 11(b)."); *Rhodes v. Siver*, 2021 WL 912393, at *1-2 (E.D. Mich. Mar. 10, 2021) (same); *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195 (W.D. Texas 2020) ("Congress did not intend to foreclose private causes of action by *also* granting Attorney General enforcement authority.") (citation omitted) (emphasis in original); *Council on Am.-Islamic Rel'ns Minn. v. Atlas Aegis, LLC*, 497 F.Supp.3d 371, 378 (D. Minn. 2020) (assuming private right of action); *League of United Latin Am. Citizens v. Pub. Interest Legal Found. ("LULAC")*, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018) (same)). *But compare Schilling v. Washburne*, 592 F. Supp. 3d. 492, 497 (W.D. Va. 2022) (concluding that there is not a private right of action under the Voting Rights Act).

The one Ninth Circuit case that discusses this issue implies, without directly stating that there is a private right of action under the Voting Rights Act. *Olagues v. Russoniello*, 770 F.2d 791, 804-05 (9th Cir. 1985). In *Olagues*, Plaintiffs—a citizen and certain organizations that promoted voting rights for Americans with Hispanic or Chinese ethnic backgrounds in the San Francisco Bay area—sued certain state and county officials for possible violation of the Voting Rights Act. Among other relief, Plaintiffs sought "statutory damages" under the Voting Rights Act, which the defendants argued were not available to plaintiffs under the Act. *Id*. at 805. In resolving this issue, the Ninth Circuit did not question the Plaintiffs' right to bring a private cause of action under the Act; indeed, the Appellate Court appears to take that right for granted, noting that the "legislative history [of the Act] nowhere suggests any action for damages, but instead observes that a *private litigant* is entitled to 'the same remedy' as the Attorney General[.]'" *Id*. (emphasis added). Plaintiff fails to cite to a Ninth Circuit case that did not allow a private right of action under the Voting Rights Act and this Court's own research did not disclose one. Considering the Ninth Circuit's apparent acceptance of a private right of action under the Act, as well as the "persuasive authority" from multiple jurisdictions that concluded Congress intended to create an implied right of action under Section 11(b) of the Act, this Court concludes that the County Defendants have a right to bring their claim.

Plaintiff also argues that the County Defendants cannot satisfy the "zone of interests" test to support their claim under the Voting Rights Act. To bring a cause of action pursuant to a federal statute, a plaintiff's asserted interests must fall within the "zone of interests" protected by the statute invoked. *City of Los Angeles v. County of*

*Kern*, 581 F.3d 841, 846 (9th Cir. 2009). The inquiry asks whether a particular class of plaintiffs has a cause of action under a particular substantive statute. "[T]he test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1120–21 (9th Cir. 2015) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399-400 (1987) (footnote omitted)).

The County Defendants easily satisfy this test. Washington's constitution and statutes charge them with operating free and fair elections in the county (*see e.g.* Wash. Const. Art. I, §19 ("All Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage); RCW 29A.04.216); potential voter intimidation is antithetical to a free and fair election, thus disrupting the County Defendants' legal obligations and placing them squarely within the zone of interests the Voting Rights Act is meant to protect. *See Hawaii v. Trump*, 859 F.3d 741, 766 (9th Cir.) ("State's interest in effectuating its refugee resettlement policies and programs [] falls within zone of interests protected by the [Immigration and Nationality Act]."), *vacated on other grounds by Trump v. Hawaii*, 138 S. Ct. 377 (2017). Thus, the County Defendants have standing to pursue their Voting Rights claim.[3]

---

[3] In her motion, Plaintiff briefly states in passing that County Defendants "have suffered no injuries 'for voting or attempting to vote,' as the [Voting Rights Act] requires." Dkt. No. 82 at 3. The County Defendants point out that the counterclaims allege a concrete injury because they incurred costs to remove and store the signs, they have incurred litigation expenses in response to Plaintiff's lawsuit, and Plaintiff's actions caused them to divert County resources from the running the primary election. Dkt. No. 90 at ¶ 38. Such allegations are sufficient at this stage of the litigation to satisfy the injury-in-fact requirement of Article III standing. *See, e.g.*, *Council on*

C. **Director Wise Has Standing to Bring a Civil Rights Act Claim**

Next Plaintiff claims that Director Wise does not have standing to assert a claim under the Civil Rights Act. According to Plaintiff, "government actors can never have standing for violations of this statute, at least insofar as the violations pertain to their official capacity as government actors." Dkt. No. 82 at 5. Instead, Plaintiff argues, "only the person whose civil rights are interfered with has standing to sue for the purported wrong." *Id.* (citing *Curtis v. Peerless Ins. Co.*, 299 F. Supp. 429, 434 (D. Minn. 1969)). The County Defendants counter that Director Wise has a quasi-sovereign interest in the proper operation of elections and in protecting the voting rights of King County citizens. This Court concludes that Director Wise has standing to sue under the Civil Rights Act to ensure that King County citizens are able to exercise their fundamental right to vote without voter intimidation. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982) (recognizing the State has an interest in "assuring that the benefits of the federal system are not denied to its general population"); *see also, Colorado v. DeJoy*, 2020 WL 5513567, at *2 (D. Colo. Sept. 14, 2020) (recognizing standing for Colorado and its elections official based on its "quasi-sovereign interests in the integrity of its own elections" and ensuring that citizens may exercise their right to vote without interference); *National Coalition on Black Civic Participation v. Wohl ("Wohl III")*, 2023 WL 2403012, *16 (S.D.N.Y. March 8, 2023) (assuming without analysis that the State of New York had standing to bring claim under the Civil Rights Act).

---

*Am.-Islamic Rels.-Minnesota v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 379 n.5 (D. Minn. 2020) (voting rights group had standing under §11(b) when forced to divert resources to counter defendant's voter intimidation activities).

**D.     The Counterclaims Survive Plaintiff's Rule 12(b)(6) Challenge**

Plaintiff challenges the pleading sufficiency of the counterclaims. Specifically, Plaintiff alleges: (1) that the Civil Rights Act counterclaim must be dismissed because it does not allege that Plaintiff acted with a racially discriminatory intent, (2) the Voting Rights Act counterclaim must be dismissed because it does not allege that Plaintiff had the subjective intent to intimidate or threaten voters, (3) the Civil Rights Act and Voting Rights Act are inapplicable to Plaintiff's actions because the verbiage on the signs does not constitute "intimidation" for purposes of those statutes and Plaintiff has not "incited" or "conspired" with anyone, and (4) the speech on the signs is "protected". The Court addresses each of these arguments below.

**1.     The County Defendants do not have to allege racial animus to state a claim under the "support-or-advocacy" clause of the Civil Rights Act**

Plaintiff argues that to state a claim for an alleged violation of the Civil Rights Act, the County Defendants must establish that she acted with race-based animus in posting the signs. She correctly points out that the counterclaims do not assert that Plaintiff's actions were motivated by racial animus. Therefore, she argues, the counterclaim asserting a violation of the Civil Rights Act must be dismissed for failure to state a claim on which relief can be granted. The County Defendants counter that their counterclaim is brought pursuant to the "support-or-advocacy" clause of the Civil Rights Act, and evidence of racial animus is not required for such claims.

§1985(3) of the Civil Rights Act can be read in two parts; the first part states it is unlawful for:

> two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;

and the second part states it is unlawful for:

> two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his *support or advocacy* in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy ...

42 U.S.C. § 1985(3) (emphasis added). The County Defendants base their claim on the second part, which is often referred to as the "support-or-advocacy" clause. *Andrews v. D'Souza*, 2023 WL 6456517, *6 (N.D. Georgia Sept. 30, 2023).

Plaintiff and the County Defendants disagree as to whether claims based on the "support-or-advocacy" clause under §1985(3) must allege that the challenged action stemmed from race-based animus. Neither the Supreme Court nor the Ninth Circuit has addressed this question head-on; however, the Supreme Court came close in *Kush v. Rutledge*. In *Kush*, the Supreme Court was asked whether another provision of the Civil Rights Act—the second portion of §1985(2)—required allegations of race-based animus. 460 U.S. 719, 722-27 (1983). In reaching its decision, the Supreme Court noted that the Civil Rights Act "could be divided into five classes of prohibited conspiracies: one proscribed by §1985(1), two proscribed by §1985(2), and two proscribed by §1985(3)." *Cervini v. Cisneros*, 593 F. Supp. 3d 530, 536-37 (W.D. Texas 2022) (citing *Kush*, 460 U.S. at 724). The Supreme Court stated that of the five categories, three of them—specifically, §1985(1), the first section of §1985(2), and the second section of §1985(3)—*i.e.* the "support-or-advocacy" clause that the County Defendants are proceeding under—"contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws." *Id*. at 537 (citing *Kush*, 460 U.S. at 724–25). The other two provisions—the second portion of §1985(2) and the first portion of §1985(3)—require that the conspirators' actions be "motivated by an intent to deprive their victims of the equal protection of

11

the laws." *Id*. (citing *Kush,* 460 U.S. at 725). The Supreme Court found this distinction significant and concluded that the requirement to plead race-based animus does not apply to the first section of §1985(2) because that portion of the Civil Rights Act did not contain the "equal protection" language. The Supreme Court did not reach the issue of whether the "support-or-advocacy" clause under the second section of §1985(3), which, like the first portion of §1985(2) also lacks the "equal protection" language, likewise lacks the requirement to plead race-based animus. *Cervini*, 953 F. Supp. 3d at 537.

Federal courts that have addressed the question of whether racial animus is a required element of the "support-or-advocacy" clause under the second section of §1985(3) since the *Kush* decision have concluded that race-based animus is not a required element of such claims. *See*, *e.g.*, *Cervini*, 593 F. Supp. 3d at 538 (holding that "a claim under the [support-or-advocacy" clause] portion of §1985(3) does not require Plaintiffs to plead racial or other class-based animus"); *Nat'l Coalition on Black Civil Participation v. Wohl*, 2023 WL 2403012, at *18 (S.D.N.Y. Mar. 8. 2023) ("A violation of the 'Support or Advocacy Clause' of [the Civil Rights Act], … does not require a showing of racial animus."); *Andrews*, 2023 WL 6456517, *6 (N.D. Georgia Sept. 30, 2023) ("[T]he support-or-advocacy clauses do not require proof of discrimination or specific intent"); *Colorado Montana Wyoming State Area Conference of NAACP v. United States Election Integrity Plan*, 2023 WL 1338676, *9 n.2 ("Under the Support or Advocacy Clause, there is no need to show racial animus.") (D. Colorado January 31, 2023). This Court finds the reasoning of the foregoing cases persuasive and anticipates that the Ninth Circuit will rule accordingly when faced with the question of whether racial animus is a required

element of the "support-or-advocacy" clause.[4] Therefore, Plaintiff's motion to dismiss the County Defendants' counterclaim based on the Civil Rights Act for failure to allege racial animus is denied.

### 2. The County Defendant's sufficiently alleged intent to "intimidate, threaten, or coerce" a voter

Next Plaintiff urges this Court to dismiss the County Defendant's counterclaim based on the Voting Rights Act, arguing that there "are no allegations remotely sufficient to support a finding that [Plaintiff] had the subjective intent to intimidate or threaten voters", a required element of a claim based on the Voting Rights Act. Dkt. No. 82 at 7.

To establish a claim under the Voting Rights Act, the County Defendants must show that Plaintiff "has intimidated, threatened, or coerced someone for voting or attempting to vote, or has attempted such intimidation, threat, or coercions." *Wohl I*, 498 F. Supp. 3d at 477. "[T]hreats and intimidation include messages that a reasonable recipient familiar with the context of the message would interpret as a threat of injury tending to deter individuals from exercising their voting rights." *Id*. The injury does not need to be one of violence or bodily harm; rather, "economic harm, legal action, dissemination of personal information, and surveillance can qualify depending on the circumstances." *Id*. The County Defendants have more than met this pleading requirement;

---

[4] Plaintiff claims that the Ninth Circuit resolved this issue in *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002). Plaintiff is incorrect. The parties in *RK Ventures* challenged appellants' standing to assert a claim under § 1983. The Ninth Circuit determined that the appellants had standing under § 1983 but questioned whether they had standing under § 1985(3). *Id*. at 1056. The Court stated in *dicta* that a plaintiff must demonstrate racial animus to successfully bring a cause of action under § 1985(3), but in doing so, the Court did not distinguish between the portion of § 1985(3) that contains the equal protection language and the "support-or-advocacy" clause which does not contain that language. Indeed, the Court did not reach a decision on standing, noting that it raised the issue *sua sponte* and, as such, the record was not adequately developed to determine whether the § 1985(3) standing requirements had been satisfied in that case. *Id*. Instead, the Court remanded the matter to the district court to address the issue. *Id*.

this is particularly true at the motion to dismiss stage, where the Court accepts the well-pleaded facts as true. *See Iqbal*, 556 U.S. at 676. The County Defendants have plausibly alleged that Plaintiff's signs intimidated voters, citing to multiple emails and telephone calls that Director Wise received from King County voters who stated that the signs intimidated them. *See* Dkt. No. 90 at ¶ 35. Indeed, the County Defendants cite to a social media post by Plaintiff that appears to indicate her clear intent to intimidate potential voters: "Let's put the FEAR OF GOD in some ballot-trafficking mules!" *Id*. at ¶ 28. Therefore, Plaintiff's motion to dismiss the County Defendants' counterclaim based on the Voting Rights Act for failure to allege voter intimidation is denied.[5]

### 3. First Amendment considerations

Lastly, Plaintiff argues that the counterclaims must be dismissed because the signs constitute speech that is protected by the First Amendment. The problem with Plaintiff's argument is that, as stated above, the counterclaims allege factual allegations sufficient to plausibly state that the signs constitute voter intimidation, and on a motion to dismiss, this Court must assume the truth of those allegations. The Ninth Circuit has unequivocally stated that speech constituting intimidation may be regulated by a state "without running afoul of the First Amendment." *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1266 (9th Cir. 2012) (citing *Virginia v. Black*, 538 U.S. 343, 360 (2003) ("Intimidation in the constitutionally proscribable sense of the word is a type of true threat."); *see also*, *United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967) (recognizing that otherwise lawful activities may be punishable under federal laws

---

[5] The Court likewise rejects Plaintiff's claim that the County Defendants did not allege conspiracy, a required element for a claim under the Civil Rights Act. The counterclaims allege that Plaintiff recruited others to place the signs near the ballot drop boxes for her. *See* Dkt. No. 90 at ¶¶ 18-20, 27-28.

against voting intimidation "if they have the proscribed effect and purpose"). Thus, if the factual allegations are proven true at a later stage in this litigation, the signs will not be protected by the First Amendment. Plaintiff's motion to dismiss the counterclaims as prohibited by the First Amendment is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Plaintiff's motion to dismiss the County Defendants' counterclaims [Dkt. No. 82]. Per this Court's order granting the parties' Stipulated Motion to Stay Discovery and All Proceedings Except Ruling on Pending Motions [Dkt. No 84], the stay in this case is lifted and the parties shall confer and jointly propose a new scheduling order within fourteen days of the date of this order.

Dated this 25th day of October 2023.

Barbara Jacobs Rothstein
U.S. District Court Judge